NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0178-15T2

5 PERRY STREET, LLC,

 Plaintiff-Respondent,

v.

SOUTHWIND PROPERTIES, LLC,
a/k/a SOUTHWIND PROPERTY, LLC,
and DEBORAH LONGSTREET a/k/a
DEBORAH WATSON a/k/a DEBORAH
WATSON LONGSTREET,

 Defendants-Appellants.
___________________________________

 Argued November 9, 2016 – Decided June 27, 2017

 Before Judges Ostrer and Leone.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Cape May County,
 Docket No. C-21-15.

 Peter A. Ouda, attorney for appellants.

 Christopher Gillin-Schwartz argued the cause
 for respondent (Barry, Corrado & Grassi, P.C.,
 attorneys; Mr. Gillin-Schwartz, on the brief).

PER CURIAM

 Defendants Southwind Properties, L.L.C. (Southwind) and

Deborah Longstreet appeal from the Chancery Division's July 24,
2015 order voiding, as a fraudulent transfer, an April 29, 2015

deed of conveyance of real property located at 5 Perry Street in

Cape May (the Property) from Southwind to Longstreet. The case

arises out of Southwind's default on two mortgages that encumbered

the Property. Following the entry of two judgments of foreclosure,

Southwind conveyed the Property to Longstreet, Southwind's only

member, on the eve of a Sheriff's sale. Plaintiff 5 Perry Street,

LLC (Perry) was the successful bidder at the Sheriff's Sale. The

order also declared that Perry obtained good title. We affirm.

 The pertinent facts are undisputed. Southwind operated a bed

and breakfast at the Property. Two non-institutional lenders held

mortgages on the property. Katie Morris Regan held a first

mortgage, executed on October 1, 1999, with an initial principal

amount of $247,000, maturing on January 1, 2011.1 Donald Katz

held a second mortgage, executed on June 30, 2004, with an initial

principal amount of $11,600 and a maturity date of June 30, 2005.

Pursuant to the judgments of foreclosure entered in August and

September 2014, the court ordered payment of $221,166.61 to the

first mortgagee and $25,443.53 to the second mortgagee.

 In 2015, Southwind obtained four adjournments of scheduled

Sheriff's sales. A sale was ultimately scheduled for April 29,

1
 The mortgage note required a balloon payment at maturity, but
payments were based on a thirty-year payment schedule.

 2 A-0178-15T2
2015. In the meantime, Longstreet attempted to refinance the

Property, which she estimated had a market value exceeding $1.4

million. However, she was unable to consummate a transaction

before April 29.

 Instead, Longstreet filed a personal Chapter 13 bankruptcy

petition on April 28, 2015.2 She later admitted that she did so

"in an effort to save valuable properties from being foreclosed."

She also executed a deed transferring the Property from Southwind

to her. The consideration stated was $1 and "Balance of

outstanding mortgage $80,000.00."3 She filed the deed the next

day, an hour and a half before the Sheriff's sale. She claimed

her attorney notified the Sheriff's Office and first mortgagee of

the deed, but Perry disputed her contention, which was unsupported

by the attorney's certification. The Sheriff's sale proceeded as

scheduled, and Perry prevailed in the auction with a $485,000 bid.

2
 The schedules attached to her petition listed the mortgage debt
to the two mortgagees as creditors holding secured claims, and
stated the Property's value as $1,486,100.
3
 The $1 consideration was typed into the deed. Longstreet stated
that she wrote in the words, "Balance of outstanding mortgage
$80,000.00." She claimed that by doing so, she intended to assume
personal liability under the mortgages, although the total due,
as noted, was close to $250,000. Notably, the Seller's Residency
Certification/Exemption that she signed indicated the only
consideration was $1.

 3 A-0178-15T2
Perry paid a twenty percent deposit, then paid the balance on May

20, 2015, and received the Sheriff's deed for the Property.

 Thereafter, Longstreet filed a motion in Bankruptcy Court to

void the Sheriff's sale, which the court denied. The Bankruptcy

Court later vacated the automatic stay, to permit Perry to proceed

with a quiet title action in Superior Court.

 Perry's verified complaint to quiet title followed. The

court entered Perry's proposed order to show cause, directing

Southwind and Longstreet to answer Perry's complaint and to show

cause why a judgment should not be entered voiding the April 29

deed, and declaring that defendants had no remaining interest in

the Property and that Perry had good and valid title. Perry sought

resolution in a summary proceeding.4

 In her written opposition, Longstreet discussed her efforts

to negotiate a settlement with the first mortgagee and to obtain

separate financing of her debts. She described her personal and

financial difficulties, noting that Southwind's charter was

revoked for failure to file annual reports, and that she operated

the LLC as if it were a sole proprietorship (although, notably,

she never assumed personal liability for Southwind's debts). She

admitted that Southwind not only defaulted on its mortgage

4
 The record does not include a formal motion seeking resolution
in a summary manner. See R. 4:67-1.

 4 A-0178-15T2
payments, but also failed to pay taxes on the Property. She

claimed that Southwind's transfer of the property to her

personally, on the eve of the Sheriff's sale, was necessary "to

rehabilitate the LLC and satisfy the outstanding mortgages." She

contended that the deed reflected that she was assuming payment

for the outstanding mortgages, although the $80,000 noted in the

deed was far less than the judgments. She asserted that she

obtained a firm financing commitment in June 2015 for $650,000,

which would enable her to satisfy all secured claims against the

Property. Defendants also challenged Perry's standing to seek the

relief identified in its complaint.

 At oral argument, Perry's counsel contended that the transfer

from Southwind to Longstreet should be voided because it was

fraudulent, claiming that various badges of fraud were

demonstrated. Defendants' counsel admitted there were no disputed

facts, but contended that Perry had failed to establish by clear

and convincing evidence an actual intent to defraud. He contended

that the transfer was motivated by Longstreet's intent to

rehabilitate the debtor.

 5 A-0178-15T2
 The judge reviewed the facts set forth above.5 He concluded

that the Property's transfer "smacks of fraud [to] such a degree

as warrants summary disposition." The judge concluded the

conveyance was intended to secure the protection of the bankruptcy

stay and delay the Sheriff's sale. He rejected Longstreet's claim

that she assumed Southwind's debt, noting that the conveyance was

not made with the mortgagees' notice or consent, and that the

conveyance was an act of default as to each mortgagee. The judge

stayed his July 24, 2015, order for thirty days, after which it

went into effect. In the two months that followed, the Sheriff

executed a writ of possession and evicted defendants from the

Property.

 Defendants' appeal followed. They present two arguments.

They contend Perry lacked standing to seek the relief the court

granted. They also contend that there existed a genuine factual

dispute as to whether Longstreet had the actual intent to defraud

creditors or future purchasers of the Property.

 Defendants' arguments lack merit and warrant only brief

discussion. R. 2:11-3(e)(1)(E). Perry obtained standing to

challenge the Southwind-to-Longstreet transfer based on its

5
 He also referred to the numerous adjournments that he granted
and his efforts to impress upon Longstreet, who sometimes
represented herself, about where she stood procedurally.

 6 A-0178-15T2
successful bid at the Sheriff's sale, its subsequent payment of

the purchase price, and its receipt of the Sheriff's deed. As a

matter of equity, Perry stands in the shoes of the judgment

creditors for the purpose of challenging the transfer. See Fid.

Union Tr. Co. v. Union Cemetery Ass'n, 134 N.J. Eq. 539, 541 (E.

& A. 1944) (stating, "it is a settled rule that purchasers at [a

Sheriff's sale], if not already parties to the suit, are regarded

to a certain extent as parties to it, to be under the control of

the court on the one hand, and its protection on the other.").

Also, in view of defendants' counsel's concession that there were

no disputed facts, we discern no error in the court proceeding in

a summary manner. See United Jersey Bank v. Vajda, 299 N.J. Super.

161, 164 (App. Div. 1997).

 The undisputed facts established that Longstreet had both

constructive and actual intent to defraud her judgment creditors.

Southwind was presumed insolvent because it was not paying its

mortgage obligations or taxes. See N.J.S.A. 25:2-23(b). Moreover,

Southwind's transfer of its only significant asset to an "insider,"

Longstreet, see N.J.S.A. 25:2-22, for consideration that was far

less than the Property's value, rendered it insolvent as its debts

exceeded its assets, see N.J.S.A. 25:2-23(a), and left it with

assets that were unreasonably small for its lodging business. See

N.J.S.A. 25:2-25(b)(1).

 7 A-0178-15T2
 In view of these facts, the transfer was fraudulent on several

grounds. First, the transfer was fraudulent as to present

creditors under N.J.S.A. 25:2-27(a), because Southwind, as the

debtor, "made the transfer . . . without receiving a reasonably

equivalent value in exchange for the transfer . . . and the debtor

was insolvent at that time or . . . became insolvent as a result

of the transfer . . . ." The transfer was also fraudulent under

N.J.S.A. 25:2-25(b)(1), because "the debtor made the transfer

. . . [w]ithout receiving a reasonably equivalent value in

exchange for the transfer . . . and the debtor . . . [w]as engaged

. . . in a business . . . for which the remaining assets of the

debtor were unreasonably small in relation to the business . . . ."

 Finally, the transfer was fraudulent under N.J.S.A. 25:2-

25(a) because "the debtor made the transfer . . . [w]ith the actual

intent to hinder, delay, or defraud any creditor of the debtor

. . . ." Actual intent was established by the fact that "[t]he

transfer . . . was to an insider," N.J.S.A. 25:2-26(a); the

transfer was made after suit and entry of judgment, see N.J.S.A.

25:2-26(d); "[t]he transfer was of substantially all the debtor's

assets," N.J.S.A. 25:2-26(e); the consideration was far less than

the value of the transferred asset, see N.J.S.A. 25:2-26(h); and

Southwind was insolvent or became insolvent after the transfer.

See N.J.S.A. 25:2-26(i).

 8 A-0178-15T2
 Longstreet's contention that she intended (eventually) to

make her creditors whole is of no moment. She admitted the

transfer was intended to foil the Sheriff's sale. She put the

Property out of reach of her creditors, at least until she was

able to secure refinancing and unilaterally decided to make good

on the debts of the denuded LLC. Yet, the Uniform Fraudulent

Transfer Act is intended to prevent just that kind of maneuver.

See Gilchinsky v. Nat'l Westminster Bank N.J., 159 N.J. 463, 475

(1999) (noting that the statute is designed to prevent a debtor

from "cheat[ing] a creditor by removing his property from the jaws

of execution." (internal quotation marks and citation omitted)).

 In any event, the transfer of the property from Southwind to

Longstreet was void because of the preexisting lien of the

foreclosure judgments:

 A sheriff's sale in enforcement of that lien
 and the deed delivered pursuant thereto will
 vest in the purchaser at the sheriff's sale,
 despite the conveyances of the properties
 since the judgment was entered,

 . . . as good and perfect an estate
 to the premises therein described as
 the execution debtor was seized of
 or entitled to at or before the
 judgment for the enforcement of
 which the execution issued, as fully
 to all intents and purposes as if
 the execution defendant had sold
 such real estate to such purchaser,
 and had received the consideration

 9 A-0178-15T2
 money and signed, sealed and
 delivered a deed for the same.

 [Furnival Mach. Co. v. King, 142 N.J. Super.
 251, 258 (App. Div. 1976).]

 Here, both Regan and Katz obtained foreclosure judgments

almost seven months before Southwind's transfer to Longstreet.

Therefore, the trial court properly found the April 28 deed void

and that Perry had good and valid title.

 Affirmed.

 10 A-0178-15T2